The prayer was that the division thus made might be set aside, and the defendant George compelled to divide the negroes again upon just and equitable principles.
A demurrer to the bill was filed by the defendants, which was on the Spring Circuit of 1827 sustained by RUFFIN, J., and the bill dismissed. Whereupon the plaintiffs appealed. At June Term, 1827, the cause was argued.
Voluntary executory agreements receive no aid either from courts of law or of equity. The parties stand upon their rights, such as they are; and hence it is a maxim that defective voluntary agreements will not be aided in a court of equity; any reformation of a conveyance being an execution of the original agreement, so far as the conveyance is varied. The same motive which induces a court to refrain from enforcing an agreement, no part of which is executed, prevents it from enforcing any part of it. The want of a consideration is therefore universally a good defense to a bill for rectifying a voluntary conveyance or enforcing a voluntary agreement.
Where, however, the conveyance is complete, and property passes or rights are vested by it, that property or those rights are guarded and protected, notwithstanding there was no consideration for passing or raising them.
The question presented by this demurrer, therefore, is, Does this bill seek for other rights than those created by the conveyance, or does it only seek for the security and protection of those which the deed has already given to the plaintiffs?
(100) The deed transfers to the plaintiffs such of the slaves as had belonged to the husband of the donor, and which should be allotted to her upon a division between her sister and herself. This is a gift of slaves in presenti, who were to be designated by an act in futuro. If upon the division none of the kind were allotted, nothing passed; if any such were allotted, they did pass. The right to call for this division did not arise from any promise made by the donor that she would divide; *Page 67 
for then it is admitted that a consideration would be necessary to support it; but it arose as a necessary incident to the right of property created by the deed. If anything passed by the deed, it diminished the property of the donor, and destroyed the power of making such a division as she pleased, which, as owner, she possessed before its execution, and imposed upon her the obligation of regarding the interest of the donees. If this is not the case, and she is at liberty to divide as she pleases, the deed might be made by her perfectly ineffectual, as she could at once have assigned to her sister all the slaves which belonged to her husband, and thus entirely defeat the gift. A difference cannot be perceived between such a division and the one complained of; for it is clearly illusory, and defeats the rights of the donees — if not to the same extent, certainly it does in some degree, which, in principle, is as objectionable as the total frustration of the gift. It has been likened to the case where a man grants all the corn he may grow (or, to use the common phrase, make) in a particular field. Although he cannot be enforced to cultivate that field, yet he shall not actively interfere for the purpose of defeating his gift or grant, by wantonly destroying the corn growing there. But this, it is said, would be a wanton act, and one to which self-interest does not prompt, as it does in the present case. (101) True, but it is as equally inadmissible to pursue our own interest at the expense of the rights of others as it is wantonly to destroy those rights. The principle is that I may, by a rightful act, take care of myself, although I may thereby injure another. All laws, human or divine, allow this; but I cannot do this by a wrongful act. But this, it is said, is begging the question; and it is insisted that the division complained of is not a wrongful act. That act, however, cannot be rightful which entirely destroys and renders of no effect a gift or transfer passing property which, if permitted to operate in the usual and ordinary way, would produce a probable benefit to the donee; and it is obvious that the probable effect of the deed would be beneficial, as it required a combination to prevent its ordinary result.
As soon as this gift was made, if the deed was not a perfect nullity, certain rights were created by it in the donees. It is true, they were contingent, as to the particular subject upon which they would attach; but it would be strange to allow the right and at the same time place it out of the protection of the law.
Such is my view of the case. I have considered the deed as if fairly obtained, and that there has been a fraudulent combination to obstruct its fair and usual operation. But I must observe that I have had, and still have, difficulty upon it. I am disposed to overrule the demurrer, without prejudice and without costs. *Page 68